USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_4/26/2021___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

              -against-

JOVAL PALMER,

                              Defendant.

1:20-cr-379-MKV

MEMORANDUM
OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

Defendant Joval Palmer, a convicted felon, is charged in a four-count Indictment with committing a gunpoint robbery and carjacking. Before the Court are Palmer's pre-trial motions (1) to dismiss the Indictment for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–62 (Mot. Dismiss ("MTD") [ECF No. 45]); (2) to suppress statements made to law enforcement (Mot. Suppress Statements ("MTS-S") [ECF No. 47]); and (3) to suppress physical evidence, specifically a handgun and box of ammunition (Mot. Suppress Evidence ("MTS-E") [ECF No. 49]). For the reasons discussed below, each of Palmer's motions is DENIED.

## BACKGROUND

### A. Factual Allegations[1]

According to the Complaint, on August 22, 2019, at approximately 2:30 p.m., a livery cab driver picked up a passenger in the Bronx, New York. (Compl. ¶ 7.a [ECF No. 1].) The passenger asked to be driven to a certain location in the Bronx. (*Id.*) Upon arriving at that location fifteen minutes later, the driver turned around to see the passenger pointing a gun at him. (*Id.* ¶ 7.b.) The

---

[1] The following allegations are taken from the Complaint and the parties' submissions in connection with the present motions. As discussed below, the Court did not hold an evidentiary hearing. The Court makes no findings of fact or credibility determinations in this Memorandum Opinion and Order.

passenger demanded that the driver exit the vehicle, which the driver did.  (*Id.*)  The passenger entered the driver seat and drove away.  (*Id.*)

According to the Complaint, the vehicle was equipped with a GPS tracker and a mechanism that enables the owner to remotely disable the engine from starting.  (*Id.* ¶ 7.c.)  The driver promptly alerted his employer of the robbery.  (*Id.*)  The employer then activated the mechanism to disable the engine from starting and began tracking the vehicle.  (*Id.*)  At approximately 3:15 p.m., the vehicle came to a stop in New Rochelle, New York.  (*Id.* ¶ 7.d.)

According to the Incident Report of the New Rochelle Police Department, law enforcement responded to the location of the vehicle, a public parking lot, at approximately 3:40 p.m.  (New Rochelle Police Dep't, Incident/Investigation Report ("Incident Report") 4 [ECF Nos. 48-1, 50-1] (Reporting Officer Narrative).)  Upon arrival, Officer Trangucci observed the vehicle in a parking space with the hood open and Mr. Palmer standing next to it.  (*Id.*)  Officer Trangucci approached Palmer, who immediately asked Trangucci if he had jumper cables.  (*Id.*; Compl. ¶ 7.d.)  Trangucci asked Palmer if the vehicle was his, and Palmer responded, "Yes, this is my car."  (Incident Report 4.)

The Incident Report alleges that Mr. Palmer sprinted away through the parking lot as other officers arrived.  (*Id.*; *id.* at 10 (Case Supplemental Report); Compl. ¶ 7.e.)  Palmer led police on an extensive footchase before he was apprehended.  (Incident Report 4, 10; Compl. ¶ 7.e.)  Police located the keys to the car under a deck staircase where Palmer had attempted to hide.  (Incident Report 4, 10; Compl. ¶ 7.e.)  Police also found a box of 9mm Luger ammunition in the front passenger seat of the vehicle.  (Incident Report 4; Compl. ¶ 7.f.)  Police searched the area with a K-9 but did not locate a handgun.  (Incident Report 10; Compl. ¶ 7.f.)

The Incident Report alleges that Mr. Palmer was transported to police headquarters where he was read his rights. (Incident Report 4.) Police officers explained to Palmer how they knew that the vehicle was stolen. (*Id.*) Palmer allegedly stated that he stole the vehicle because it was left running with the keys inside. (*Id.*)

According to the ATF Report of Investigation, ATF agents searched the area where Palmer was apprehended in search of the handgun on December 12, 2019. (U.S. Dep't Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Report of Investigation ("ATF Report") 1 [ECF No. 50-2].) No handgun was recovered. (*Id.*) On March 10, 2020, New Rochelle police recovered a loaded, black Glock 9mm pistol, which had been discovered by a gardener in the bushes of the front yard of a residence where the footchase had occurred. (*Id.*) The owner of the residence contacted police, stating that she knew police had been searching for a firearm in connection with a foot pursuit several months ago. (*Id.* at 2 (Reporting Officer Narrative).)

The parties explain that the pistol and the box of ammunition remained in the custody of the New Rochelle Police Department until they were produced to an ATF agent on May 27, 2020. (MTS-E 3; Opp. 13.) The items were entered into ATF custody on June 3, 2020. (MTS-E 3.)

**B.  Procedural Background**

On October 25, 2019, Mr. Palmer was taken from state custody into federal custody based on the Complaint, which charged him with Hobbs Act robbery, using a firearm in furtherance of a crime of violence, being a felon in possession of a firearm, and carjacking. (Compl. ¶¶ 1–4.) That same day Palmer was appointed counsel (Order Appointing Counsel [ECF No. 4]) and appeared before a magistrate judge (Minute Entry: Initial Appearance [ECF No. 5]).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

On July 23, 2020, a grand jury returned a four-count Indictment charging Palmer with (1) Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count One); (2) use of a firearm during and in relation to a crime of violence, specifically the Hobbs Act robbery in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(ii) and 2 (Count Two); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count Three); and (4) being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count Four).  (Indictment 1–3 [ECF No. 19].)

Leading up to the Indictment, various magistrate judges granted applications for continuances submitted by the Government, extending the deadline to indict under the Speedy Trial Act, most of which admittedly were consented to by Palmer's former counsel. Two continuances are specifically contested. First, on November 27, 2019, two days after the then-applicable deadline to indict, Magistrate Judge Lehrburger granted the Government's application for a continuance dated November 21, 2019. (Order Continuance Nov. 2019 [ECF No. 7]; App. Continuance Nov. 21, 2019 [ECF No. 6].) Second, on April 24, 2020, Magistrate Judge Netburn granted, over Palmer's objection, the Government's application for a continuance given the extraordinary circumstances presented by the COVID-19 pandemic. (App. Continuance Apr. 2020 [ECF No. 15]; Order Continuance Apr. 2020 [ECF No. 15].)

Palmer has raised issues concerning the speedy trial clock and his representation multiple times during this case. Palmer filed a letter dated March 29, 2020, expressing dissatisfaction with his attorney and requesting that the case be dismissed because he had been in custody for five months without having been indicted. (Def.'s Letter Mar. 2020 [ECF No. 14].) Thereafter, Magistrate Judge Moses granted a request by Palmer's attorney to be relieved as counsel and to have substitute counsel be appointed in his place. (Endorsed Letter [ECF No. 16].)

Palmer also inquired with the Court about the thirty-day indictment deadline under the speedy trial clock during his arraignment on August 7, 2021. (Tr. Arraignment 24:8–24:16 [ECF No. 26].) When advised that the time to indict had been extended several times on consent by his former counsel, Palmer insisted that he never had given his personal consent to counsel. (*Id.* at 24:17–25:5.) ████████████████████████████████████████████████████████

████████ Mr. Palmer's attorney then cut him off, advising Palmer not say anything further on the record and that he and counsel discuss the issue in private. (*Id.* at 25:7–25:19.) The Court made

clear at that time that if there were any issues, counsel should raise them with the Court and the Court would schedule a hearing.  (*Id.* at 25:24–26:5.)

Mr. Palmer later filed a letter dated August 13, 2020, requesting that his attorney be relieved and that new counsel be appointed.  (Def.'s Letter Aug. 2020 [ECF No. 25].)  Palmer's counsel joined in the request.  The Court granted this request and directed new counsel, Palmer's current counsel, to confer with Palmer and advise the Court if Palmer intends to file any motions related to Speedy Trial Act issues or otherwise.  (Order [ECF No. 28].)

Palmer now moves to dismiss the Indictment under the Speedy Trial Act, to suppress his statements to law enforcement, and to suppress the handgun and ammunition.  The Government opposes the motions.  Palmer filed a reply only with respect to his motion to suppress the handgun and ammunition.  (MTS-E Reply [ECF No. 61].)

## DISCUSSION

### A.  Motion To Dismiss Indictment

Palmer moves to dismiss the Indictment under the Speedy Trial Act on the ground that the Government failed to indict him within thirty days of his arrest.  (MTD Br. 1 [ECF No. 46].)  Palmer argues that he never consented to any continuance agreed to by his former counsel and that the November 2019 continuance was untimely.  (MTD Br. 3–4.)  He also objects to the April 2020 continuance, granted over his objection, by reason of COVID-19-related restrictions.  (*Id.*)

The Speedy Trial Act provides, in relevant part, that any "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  If a defendant is not indicted before the thirty-day clock expires, the charges "shall be

dismissed or otherwise dropped." *Id.* § 3162(a)(1); *see United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004).

The Speedy Trial Act excludes from the thirty-day clock as a matter of law certain periods of delay resulting from other proceedings concerning the defendant. 18 U.S.C. § 3161(h)(1). The statute specifically excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(D). "[T]he term 'motion' generally means '[a]n application made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant.'" *Melendez v. United States*, 518 U.S. 120, 126 (1996) (second alteration in original) (quoting Black's Law Dictionary 1013 (6th ed. 1990)). An application or request for a continuance qualifies as a "motion" under Section 3161(h)(1)(D) and therefore excludes time from its filing to the date the Court disposes of it. *See United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993); *see also United States v. Bloate*, 655 F.3d 750, 756 (10th Cir. 2011) ("A party's submission—whether express or implied, formal or informal—can be considered a 'motion' for Speedy Trial Act purposes if it contains a request for relief that requires court intervention." (citing *Arbelaez*, 7 F.3d at 347–48; and *United States v. Williams*, 557 F.3d 943, 951 n.3 (8th Cir. 2009))); *United States v. Green*, 508 F.3d 195, 200 (5th Cir. 2007) (holding that "any pretrial motion" tolls the speedy trial clock). Tolling of the speedy trial clock under this subsection is automatic. *United States v. Tinklenberg*, 563 U.S. 647, 660 (2011); *Henderson v. United States*, 476 U.S. 321, 331 (1986).

The Speedy Trial Act also excludes any "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). The term "proceeding," as originally enacted, "was very much intended to encompass pretrial motions." *United States v. Bufalino*, 683

F.2d 639, 643 (2d Cir. 1982).  A motion is "under advisement" once "the court receives all the papers it reasonably expects."  *Henderson*, 476 U.S. at 329; *see also United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1983) (noting that "the advisement period begins once the court has everything it expects from the parties prior to making a decision" (citing *Bufalino*, 683 F.2d at 642–44)).

Finally, the Speedy Trial Act excludes any delay "resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served" outweigh the interest of the public and the defendant in a speedy trial.  18 U.S.C. § 3161(h)(7)(A); *see also Zedner v. United States*, 547 U.S. 489, 498–99 (2006).  Pursuant to the plain language of the statute, "a district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its reasons on the record."  *United States v. Lynch*, 726 F.3d 346, 356–57 (2d Cir. 2013) (collecting cases from five other circuits).

No violation of the Speedy Trial Act occurred in this case.  While Palmer denies ever consenting to the continuances agreed to by his former counsel, he does not challenge his former counsel's basis for consenting to the continuances or the magistrate judges' findings supporting the continuances.  Moreover, the law is clear that Palmer's consent is not required for an ends-of-justice continuance.  *See* 18 U.S.C. § 3161(h)(7)(A); *Lynch*, 726 F.3d at 355 (noting that "the Speedy Trial Act 'does not require a defendant's consent to the continuance' in order for a judge to be able to grant a motion in furtherance of the ends of justice" (quoting *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010))); *United States v. Gates*, No. 1:17-CR-00092 JLS (MJR), 2020 WL 6218707, at *15 (W.D.N.Y. Sept. 30, 2020) (rejecting argument that defendant's statutory speedy trial rights were violated where continuances were granted without his express consent),

*report & recommendation adopted*, 2020 WL 6205814 (W.D.N.Y. Oct. 22, 2020); *United States v. Naseer*, 38 F. Supp. 3d 269, 275 n.8 (E.D.N.Y. 2014) ("Defense counsel can consent to a continuance without the client's approval." (citing *Lynch*, 726 F.3d at 354)); *see also United States v. Pair*, ___ F. Supp. 3d ____, 2021 WL 279239, at *11 (E.D. Va. 2021) (rejecting similar argument, noting that "counsel acted on [defendant's] behalf and did not need his consent to move for a continuance").

In claiming a Speedy Trial Act violation, Palmer relies on the number of pre-indictment continuances (eight), arguing that the continuances suggest the Government could not timely indict him on the evidence available to it.  (MTD Br. 3–4.)  There is no question that courts may "grant several consecutive ends-of-justice continuances as long as the circumstances so warrant."  *United States v. Cain*, No. No. 05-CR-231A, 2007 WL 119292, at *3 (W.D.N.Y. Jan. 10, 2007) (citing *United States v. Gallardo*, 773 F.2d 1496, 1505 (9th Cir. 1984)).  Here, the docket reflects that each continuance was warranted by the circumstances and supported by an on-the-record finding that the ends of justice served outweighed the interest of Palmer and the public in a speedy trial.  *See Zedner*, 547 U.S. at 498–99.

Six continuances were granted to enable the Government and Palmer, together with defense counsel, to discuss a possible disposition of the case.  (*See* App. Continuance Nov. 2019 ¶¶ 3–4 [ECF No. 6]; Order Continuance Nov. 2019 at 1 [ECF No. 7]; App. Continuance Dec. 2019 ¶¶ 4–5 [ECF No. 8]; App. Continuance Jan. 2020 ¶¶ 4–5 [ECF No. 9]; App. Continuance Feb. 2020 ¶¶ 4–5 [ECF No. 10]; App. Continuance Mar. 2020 ¶¶ 4–5 [ECF No. 12]; App. Continuance June 2020 ¶¶ 4–5 [ECF No. 18].) ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Courts have long recognized that

plea negotiations are a legitimate basis for an ends-of-justice continuance. *See, e.g.*, *United States v. Brown*, No. 13–CR–6006, 2013 WL 4833138, at *3 (W.D.N.Y. Sept. 10, 2013) ("Orders granting excludable time to pursue pre-indictment plea negotiations are not inconsistent with the purpose of the Speedy Trial Act." (citing *United States v. Maryea*, 704 F.3d 55, 67 (1st Cir. 2013))); *United States v. Avendano*, No. 02 CR 1059(LTS), 2002 WL 31496219, *2 (S.D.N.Y. Nov. 7, 2002) (finding "no basis" to dismiss indictment as untimely where continuances were granted to allow discussions of possible disposition of case).

Two continuances—April and May 2020—were granted due to the extreme circumstances presented by the COVID-19 pandemic.  (*See generally* App. Continuance Apr. 2020 [ECF No. 15]; Order Continuance Apr. 2020 [ECF No. 15]; App. Continuance May 2020 [ECF No. 17]; Order Continuance May 2020 [ECF No. 17].)  Mr. Palmer specifically challenges the April 2020 continuance, to which he did object.  However, several courts have found that the disruptions caused by, and the public health measures necessary to protect against, the COVID-19 pandemic were sufficient grounds for ends-of-justice continuances.  *See, e.g.*, *United States v. Akhavan*, ___ F. Supp. 3d ____, 2021 WL 797806, at *4 (S.D.N.Y. Mar. 1, 2021) (finding that exclusions of time based on COVID-19 pandemic were justified); *United States v. Carrillo-Villa*, 451 F. Supp. 3d 257, 261–62 (S.D.N.Y. 2020) (holding that COVID-19 outbreak justified ends-of-justice continuance).  Indeed, Chief Judge McMahon issued a Standing Order automatically excluding time in all cases under the Speedy Trial Act from April 27, 2020, to June 15, 2020.  (Standing Order M10-468 ¶ 6, 20-mc-196 (CM) (S.D.N.Y. Apr. 20, 2020) [ECF No. 1].)  Notwithstanding Palmer's objection, the April 2020 continuance was warranted by the circumstances, supported by on-the-record findings, and therefore proper under Section 3161(h)(7)(A).  (App. Continuance Apr. 2020 [ECF No. 15]; Order Continuance Apr. 2020 [ECF No. 15].)  *See United States v.*

*Hoskins*, No. 13–CR–284 (S–1)(DRH), 2015 WL 6506945, at *4 (E.D.N.Y. Oct. 27, 2015)

("Exclusion of time may be done by the court on its own motion or on the government's motion,

both of which may be done over a defendant's objection." (citing *United States v. Rill*, No. 06-

00109-01-CR-W-GAF, 2007 WL 495016 (W.D. Mo. Feb. 12, 2007))); *United States v. Stegemann*,

1:13-cr-357 (GLS), 2015 WL 13855529, at *5 (N.D.N.Y. July 24, 2015) (rejecting speedy trial

challenge where court's orders "include[d] the essential ends of justice finding, and properly

excluded time regardless of either parties' objection"); *United States v. Jackson*, No. 04 CR.

801(PKC), 2006 WL 238991, at *1 (S.D.N.Y. Jan. 31, 2006) (recognizing court's authority to

exclude time over defendants' objection under ends-of-justice exception (citing 18 U.S.C.

§ 3161(h)).

Palmer also singles out for challenge the November 2019 continuance.  The November

2019 application for a continuance of the time to indict was not untimely.  The speedy trial clock

was triggered when Palmer was taken into federal custody on October 25, 2019.  (Minute Entry

Initial Appearance [ECF No. 5].)  *See* 18 U.S.C. § 3161(b); *United States v. Jones*, 129 F.3d 718,

721–22 (2d Cir. 1997); *see also United States v. Ahmed*, No. 12–CR–661 (SLT)(S–2), 2015 WL

1636827, at *1 (E.D.N.Y. Apr. 10, 2015) ("[T]he triggering event here was when defendants were

transferred to United States custody in connection with the charges in the indictment.").  The thirty-

day clock began to run on October 26, 2019, the day after Palmer's federal arrest.  *See* Fed. R.

Crim. P. 45(a)(1)(A) ("exclude the day of the event that triggers the period"); *United States v.*

*Gamble*, No. 02 CR 476 SJ, 2003 WL 21143077, at *1 (E.D.N.Y. Mar. 24, 2003).  Accordingly,

the deadline to indict was November 25, 2019.

Palmer argues that the Government's continuance application was untimely because it was

docketed on November 27, 2019.  (MTD Br. 3–4.)  But the Government's application dated

November 21, 2019 was in fact timely because it was filed with the Court on November 25, 2019. (*See* App. Continuance Nov. 2019 [ECF No. 6]; Order Continuance Nov. 2019 [ECF No. 7].) Court records reflect that, in accordance with common practice in this District, the Government e-mailed to the Court on November 22 the criminal case calendar, which lists the order of continuance in this case scheduled for November 25. The Court then received the hard copy of the Government's application on November 25. The application was not docketed until it was granted on November 27. Indeed, each pre-indictment continuance application in this case was not docketed until it was granted, sometimes together with the Order of Continuance in a single docket entry.[2] In short, the contested continuance application was filed with and received by the Court on November 25, 2019, and thus was timely made.

There was no speedy trial clock violation pursuant to exclusions under Sections 3161(h)(1)(D) and (H). The Government's application for a continuance qualifies as a motion under Section 3161(h)(1)(D). *See Bloate*, 655 F.3d at 756; *Arbelaez*, 7 F.3d at 347–48. As such, the thirty-day clock automatically stopped on November 25, 2019, when the Court received the application. *See Arbelaez*, 7 F.3d at 347 (holding that letter requesting continuance qualified as pretrial motion and created excludable time). Alternatively, the period between the filing of the Government's application (November 25, 2019) and the Court's entering the Order of Continuance (November 27, 2019) is excludable under Section 3161(h)(1)(H) because the application, or motion, was "under advisement" during that time. *See Henderson*, 476 U.S. at 329; *Bufalino*, 683 F.2d at 642–44.

---

[2] It bears noting, moreover, that the application is dated November 21, 2019, and reads as pre-dating the November 25 deadline. (*See* App. Continuance Nov. 2019 ¶¶ 2–4 [ECF No. 6].) The Government also affirmed in each subsequent continuance application that the November 2019 application was timely sought on or about November 21, 2019. (*See* App. Continuance Dec. 2019 ¶ 3 [ECF No. 8]; App. Continuance Jan. 2020 ¶ 3 [ECF No. 9]; App. Continuance Feb. 2020 ¶ 3 [ECF No. 10]; App. Continuance Mar. 2020 ¶ 3 [ECF No. 12]; App. Continuance Apr. 2020 ¶ 5 [ECF No. 15]; App. Continuance May 2020 ¶ 5 [ECF No. 17]; App. Continuance June 2020 ¶ 3 [ECF No. 18].)

Whether considered under Section 3161(h)(1)(D) or (H), the timely filing of the Government's continuance application tolled the thirty-day deadline to indict. *See United States v. Zerilli*, 128 F. App'x 473, 476 (6th Cir. 2005) (finding that time between motion for continuance and date it was denied was excludable under Sections 3161(h)(1)(D) and (H)); *United States v. Titlbach*, 339 F.3d 692, 698–99 (8th Cir. 2003) (rejecting Speedy Trial Act challenge, noting that defendant's calculations "failed to exclude time for his motion for an extension of time filed June 8 and resolved June 10"); *United States v. Darby*, 744 F.2d 1508, 1518 (11th Cir. 1984) (finding that six-day period between filing and disposition of defendant's motion for continuance was excludable from speedy trial clock computation); *United States v. Foley*, No. 3:18-cr-00333-(VLB), 2020 WL 423342, at *3 (D. Conn. Jan. 27, 2020) ("The speedy trial clock stopped again on February 15th upon the Defendant's renewed motion for a continuance and did not restart until after the Court ruled on the motion on February 19th."). Therefore, there was no speedy trial violation based on the November 2019 continuance. Accordingly, Palmer's motion to dismiss the Indictment is denied.

## B.  Motion To Suppress Statements

Palmer moves to suppress the statements he allegedly made to law enforcement asking Officer Trangucci for jumper cables, confirming to Officer Trangucci that he owned the vehicle, and admitting that he stole the vehicle because it was left running with the keys inside. (MTS-S Br. 4–6 [ECF No. 48].)  In the alternative, Palmer requests an evidentiary hearing to determine whether these statements were obtained unlawfully. (*Id.* at 1.)

The Fifth Amendment protects against compelled self-incrimination. U.S. Const. amend. V.  In *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court found that "in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures

which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." As a procedural safeguard, the Court established the now-familiar "*Miranda* warnings," which it deemed necessary "to secure the privilege against self-incrimination." *Georgison v. Donelli*, 588 F.3d 145, 154 (2d Cir. 2009) (quoting *Colorado v. Spring*, 479 U.S. 564, 572 (1987)).

The obligation to give *Miranda* warnings is triggered only when an interaction between law enforcement and an individual becomes a "custodial interrogation." *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011). Naturally, a custodial interrogation is composed of two elements: (1) "there must be an interrogation of the defendant"; and (2) "it must be while she is in 'custody.'" *Id.* (citing *Cruz v. Miller*, 255 F.3d 77, 80–81 (2d Cir. 2001); and *United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995)).

An "interrogation" consists of "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). The term encompasses "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (footnote omitted); *see also United States v. Familetti*, 878 F.3d 53, 57 (2d Cir. 2017). The interrogation inquiry "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301.

A defendant is "in custody" when there is "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (alteration omitted) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)); *see also Berkemer v. McCarty*, 468 U.S. 420, 441 (1984). This inquiry is objective. *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). The overarching question is "whether a

reasonable person in the suspect's position would have understood herself to be subjected to restraints comparable to those associated with a formal arrest." *FNU LNU*, 653 F.3d at 153 (internal quotation marks and alteration omitted) (quoting *Georgison*, 588 F.3d at 155).

"Two discrete inquiries are essential to the [custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)); *see also J.D.B.*, 564 U.S. at 270; *United States v. Newton*, 369 F.3d 659, 669–72 (2d Cir. 2004); *United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003). A custody determination requires consideration of several factors: "the interrogation's duration; its location . . . ; whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect he was free to leave or under suspicion"; "the nature of the questions asked"; and "[a] reasonable person's expectations about how the questioning is likely to unfold." *FNU LNU*, 653 F.3d at 153; *see also Tankleff v. Senkowski*, 135 F.3d 235, 244 (2d Cir. 1998).

On a motion to suppress statements, the defendant bears the burden of showing that he was subject to custodial interrogation. *United States v. Shteyman*, No. 10 CR 347(SJ), 2011 WL 2006291, at *14 (E.D.N.Y. May 23, 2011) (collecting cases); *see also United States v. Pena*, 961 F.2d 333, 336 (2d Cir. 1992) (collecting cases); *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980) (collecting cases). A defendant is "not entitled to an evidentiary hearing unless [he] can show that there is a contested issue of material fact with respect to the issue for which the hearing is requested." *United States v. Dewar*, No. 06 Cr. 311 (SCR), 2007 WL 9711670, at *5 (S.D.N.Y. Sept. 10, 2007) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). To warrant a

hearing on a motion to suppress, the moving papers must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact" exist. *United States v. Getto*, 729 F.3d 221, 226 n.6 (2d Cir. 2013) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 165 (2d Cir. 2008)).  In addition, a defendant must submit an affidavit of someone claiming personal knowledge of the facts.  *See United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967); *see also United States v. Barrios*, 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir. 2000) (summary order); *United States v. Noble*, No. 07 Crim. 284(RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008).

As a preliminary matter, the Court may rule on Palmer's motion to suppress statements without an evidentiary hearing.  Palmer has not shown a contested issue of material fact regarding the challenged statements.  *Dewar*, 2007 WL 9711670, at *5.  Indeed, in his moving papers Palmer accepts the facts as alleged in the police Incident Report.  (*See generally* MTS-S.)  Moreover, Palmer did not submit his own affidavit or an affidavit of someone claiming personal knowledge of the underlying facts.  *See Gillette*, 383 F.2d at 648; *Barrios*, 2000 WL 419940, at *1; *see also United States v. Perryman*, No. 12–CR–0123 (ADS), 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013) ("Courts in this Circuit have 'repeatedly' denied motions to suppress without a hearing 'where defendants have failed to provide affidavits alleging facts based on personal knowledge.'" (collecting cases)).

As to the merits of the motion, Palmer's pre-arrest statements are not the product of a custodial interrogation.  Palmer was not subjected to interrogation when he allegedly requested jumper cables from Officer Trangucci.  According to the undisputed police Incident Report, Palmer spontaneously made the statement, unprompted, as Officer Trangucci approached him and before Trangucci asked any questions.  As *Miranda* recognizes, "[v]olunteered statements of any kind are

not barred by the Fifth Amendment." 384 U.S. at 478; *see United States v. Colon*, 835 F.2d 27, 28 (2d Cir. 1987) (finding *Miranda* inapplicable where inculpatory statement was spontaneous and did not result from interrogation); *see also Patterson v. New York*, No. 08-CV-5009 (ARR), 2010 WL 1438216, at *6 (E.D.N.Y. Apr. 9, 2010) (noting that "voluntary or spontaneous statements, which do not result from 'official interrogation,' have never been subject to the bounds of *Miranda*" (citing *Miranda*, 384 U.S. at 478; and *Wolfrath v. LaVallee*, 576 F.2d 965, 973 n.6 (2d Cir. 1978))).  And the mere act of approaching a suspect, standing alone, is not likely to illicit an incriminating response and therefore does not amount to interrogation. *See, e.g.*, *United States v. Tillard*, No. 18-cr-6091-FPG-JWF, 2019 WL 8105894, at *5 (W.D.N.Y. Oct. 4, 2019) (denying motion to suppress where statement "was entirely spontaneous and not in response to any direct question"); *United States v. DeLouya*, No. 1:04CR588 (GLS), 2005 WL 3244173, at *17 (N.D.N.Y. Nov. 30, 2005) (finding no custodial interrogation where agent "did nothing more than approach two men sitting in parked cars in a public parking lot" because statements were "made during a consensual encounter" and were "the by-product of an unrestrained choice to speak").

The Government does not respond to Palmer's argument that his second statement—that he owned the vehicle—was in response to an interrogation.  "In some instances, the government's failure to respond to a defendant's argument may be deemed a waiver."  *United States v. Shine*, No. 17-CR-0028(FPG)(JJM), 2018 WL 1721924, at *1 (W.D.N.Y. Feb. 26, 2018) (citing *United States v. Madrid*, 916 F. Supp. 2d 730, 736 (W.D. Tex. 2012)).

It is not alleged, however, that Palmer was "in custody" when he made the ownership statement or the jumper cable statement, and as a result, neither statement is suppressible.  When he made the pre-arrest statements, Palmer was confronted by a single officer in a public parking lot in broad daylight.  Nothing in the record suggests, and Palmer does not contend, that he was

threatened in any way, was subjected to a show of force, was told that he was under arrest or not free to leave, or was physically restrained or handcuffed—"a hallmark of a formal arrest." *Newton*, 369 F.3d at 676 (collecting cases); *see FNU LNU*, 653 F.3d at 155; *United States v. Gomez*, 199 F. Supp. 3d 728, 746 (S.D.N.Y. 2016); *United States v. Hester*, No. 14 CR 420(VB), 2015 WL 861749, at *2–3 (S.D.N.Y. Feb. 9, 2015); *United States v. Soteriou*, No. 5:12–cr–39, 2012 WL 5426440, at *5 (D. Vt. Nov. 7, 2012). Palmer cannot credibly argue that a reasonable person in these circumstances would not feel "at liberty to leave the stop" (MTS-S 5) when he in fact did leave the stop. It is not disputed that after making the statements, Palmer ran away through the parking lot, prompting the footrace and search.

The totality of the circumstances surrounding the parking lot encounter overwhelmingly weighs against a finding that Palmer was "in custody" when he made the challenged statements. *See United States v. Casanova*, No. 11 Cr. 562(RJS), 2012 WL 760308, at *4–5 (S.D.N.Y. Mar. 8, 2012) (finding defendant not in custody where he was questioned by several agents in public parking lot at 5:00 p.m. and not physically restrained); *United States v. Reyes*, No. 11 Cr. 58(RJH), 2012 WL 363042, at *7 (S.D.N.Y. Feb. 1, 2012) (finding defendant not in custody where "the questioning took place on a public street; no guns were drawn; no physical restraints were used . . . ; and only two of the [six] agents actually asked [defendant] questions"); *United States v. Thevis*, 469 F. Supp. 490, 506 (D. Conn. 1979) ("Since the officers did not in any way restrict [defendant's] freedom to leave the parking lot, their interrogation of her was not custodial."), *aff'd*, 614 F.2d 1293 (2d Cir. 1979); *see also United States v. Diaz*, 736 F.3d 1143, 1149 (8th Cir. 2013) (finding defendant not in custody where agents approached him in public parking lot, their weapons were not visible, and they did not physically restrain him); *United States v. Dinwiddie*, No. S1–1:06 CR 134 CDP DDN, 2008 WL 4922000, at *15 (E.D. Mo. Jan. 29, 2008) (finding

defendant not in custody where he was approached by officers in public parking lot, no weapons were drawn, no threats were made, and defendant was not physically restrained), *report & recommendation adopted*, 2008 WL 1925032, (E.D. Mo. Apr. 29, 2008); *United States v. Mastera*, No. CRIM. 04–50–P–S, 2004 WL 1770139, at *3 (D. Me. Aug. 6, 2004) (finding no custody where defendant was briefly questioned in parking lot by one officer and not physically restrained), *report & recommendation adopted*, 2004 WL 1920785 (D. Me. Aug. 27, 2004).  Because Palmer was not "in custody" when he made the two pre-arrest statements, *Miranda* warnings were not required. Accordingly, Palmer's motion to suppress these statements is denied.

With respect to Palmer's post-arrest statement at police headquarters that he stole the vehicle, the Government has advised that it does not intend to offer this statement in evidence at trial.  (Opp. 4 n.3, 10 n.6.)  As such, Palmer's motion to suppress this statement is denied as moot. *See United States v. Asmodeo*, 763 F. App'x 75, 77 (2d Cir. 2019) (summary order); *United States v. Brown*, No. 18-CR-6119 CJS/MWP, 2020 WL 6778254, at *1 (W.D.N.Y. Nov. 18, 2020); *United States v. Simmons*, 351 F. Supp. 3d 214, 222 (E.D.N.Y. 2018); *United States v. Noble*, No. 93 Cr. 262 (LMM), 1993 WL 307882, at *1 (S.D.N.Y. Aug. 12, 1993).

## C.  Motion To Suppress Physical Evidence

Palmer moves "to suppress" the handgun and box of ammunition, relying on Federal Rule of Evidence 901.  (*See generally* MTS-E Br. [ECF No. 50].)  Palmer argues that the handgun and ammunition cannot be properly authenticated as required under Federal Rule of Evidence 901(a) and as such, should be "suppressed."[3]  Because his motion is premised on a Rule of Evidence, not an alleged constitutional violation, his motion is more appropriately treated as a motion *in limine*.

---

[3] In the alternative, Palmer requests an evidentiary hearing with respect to "these evidentiary issues." (MTS-E Br. 6.) For the same reason Palmer is not entitled to an evidentiary hearing regarding the challenged statements, Palmer's request for a pretrial evidentiary hearing in connection with his motion to suppress physical evidence is denied. Palmer has not submitted an affidavit of someone claiming personal knowledge of the underlying facts or otherwise shown a

An *in limine* motion "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Cilins*, No. 13 Cr. 315(WHP), 2014 WL 173414, at *2 (S.D.N.Y. Jan. 15, 2014) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001)). A ruling on a motion *in limine* "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce v. United States*, 469 U.S. 38, 41 (1984).

Palmer is correct, of course, that "[t]he requirement of authentication is a condition precedent to admitting evidence." *United States v. Vayner*, 769 F.3d 125, 129 (2d Cir. 2014). Federal Rule of Evidence 901(a) provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). This rule "does not erect a particularly high hurdle." *United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) (quoting *United States v. Dhinsa*, 243 F.3d 635, 658–59 (2d Cir. 2001)); *see also United States v. William*, 506 F.3d 140, 151 (2d Cir. 2007); *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).

Rule 901 is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016) (quoting *Tin Yat Chin*, 371 F.3d at 37–38). "The burden of authentication

---

contested issue of material fact. Of course, at trial Palmer will have the opportunity to hear and to challenge the Government's evidence by which it seeks to authenticate the gun and ammunition and connect it to Palmer.

does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.  Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *United States v. Ganias*, 824 F.3d 199, 215 n.33 (2d Cir. 2016) (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)); *see also United States v. Casamento*, 887 F.2d 1141, 1188 (2d Cir. 1989) (noting that "the prosecution need only prove a rational basis from which to conclude that the exhibit did, in fact, belong to the [defendants]" (quoting *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984))).

To authenticate an instrument allegedly used in the commission of the crime, the prosecution must generally link the instrument to the defendant and to the crime.  2 Michael H. Graham, Handbook of Federal Evidence § 401:4, Westlaw (updated Nov. 2020).  Evidence may be authenticated through direct or circumstantial proof.  *Vayner*, 769 F.3d at 130 (quoting *United States v. Al–Moayad*, 545 F.3d 139, 172 (2d Cir. 2008)).  "The chain of custody is ordinarily a method of authentication for physical evidence."  *United States v. Gelzer*, 50 F.3d 1133, 1140 (2d Cir. 1995).  As Palmer concedes (*see* MTS-E 4), a break in the chain of custody will not necessarily result in the exclusion of physical evidence.  "[T]he principal function of authentication testimony is to 'convince the court that it is improbable that the original item has been exchanged with another or otherwise tampered with.'"  *Gelzer*, 50 F.3d at 1141 (citing *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992)).

In order for the physical evidence to be excluded, Palmer bears the burden to prove that the evidence is "clearly inadmissible on all potential grounds."  *Cilins*, 2014 WL 173414, at *2 (quoting *Paredes*, 176 F. Supp. 2d at 181).  He has not done so.  The Government has made a sufficient showing *at this stage* to rationally permit a conclusion that the handgun and box of

ammunition were used by Palmer in the alleged crime.  The Government represents that it will offer evidence at trial that the handgun was recovered in the area where the footchase occurred and contained the same caliber ammunition (9mm) as that found in the vehicle on the day of the alleged carjacking.  (Opp. 13; *see also* Incident Report 4.)  The Government also suggests that, assuming he testifies at trial, the cab driver can identify Palmer as the man who pointed a gun at him during the robbery.  (Opp. 17 n.9.)  Assuming evidence of this sort is introduced at trial, the circumstances create a "reasonable likelihood," *Ganias*, 824 F.3d at 215 n.33, or "rational basis," *Casamento*, 887 F.2d at 1188, to conclude that the handgun was possessed by Palmer and used in the alleged carjacking, *see, e.g.*, *United States v. Orena*, 32 F.3d 704, 715 (2d Cir. 1994) (affirming admission of firearms recovered beneath deck in back yard of house where defendant was arrested where circumstances made it "rational to conclude that the firearms belonged to [defendant]").

Palmer argues that "the seven-month gap in time between Mr. Palmer's arrest and the subsequent discovery of the firearm" and the "natural disintegration" that would occur to a firearm left outside for months forecloses any connection of the handgun to Palmer and this case.  (MTS-E 4–5; *see also* MTS-E Reply 2–3 (collecting cases where firearms admitted at trial were seized upon arrest or in locations within defendants' control).)  But neither a time-gap between a crime and the recovery of physical evidence nor the natural corrosion of physical evidence left in the elements automatically forecloses admission of such evidence at trial.  *See United States v. Causey*, 185 F.3d 407, 419–20 (5th Cir. 1999) (holding that gun barrel recovered from canal thirteen months after crime was properly admitted because evidence supported inference that it was on the murder weapon at time of crime); *United States v. Ramey*, 414 F.2d 792, 794 (5th Cir. 1969) (holding that pistol recovered across the country five months after robbery was properly admitted because "facts

surrounding its discovery were sufficient to support an inference that [defendant] likely used it to perpetrate the robbery").

Palmer's argument that the ammunition should be suppressed because it was not turned over to ATF until two months after the firearm was discovered also is unavailing.  (MTS-E 5–6.) Local police seized the ammunition from the vehicle at the time of Palmer's arrest.  (Incident Report 4.)  The Government's allegations are sufficient at this stage for the Court to conclude that the Government can satisfy the authentication standard of Rule 901 at trial notwithstanding any alleged defects in the chain of custody.  *See United States v. Stuckey*, 317 F. App'x 48, 50 (2d Cir. 2009) (summary order) ("[A]lthough a perfect chain of custody may not have been established, there was enough evidence of authenticity to permit a reasonable juror to conclude that the [gun and ammunition] admitted was the evidence found in [defendant's] room." (citing *Dhinsa*, 243 F.3d at 658)); *United States v. Gorman*, 312 F.3d 1159, 1163 (10th Cir. 2002) (holding that box of ammunition recovered from vehicle was properly authenticated despite imperfect chain of custody when officers' testimony was "placed in context and considered in light of all factual circumstances").  And as Mr. Palmer concedes (MTS-E 4), "[b]reaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence . . . ."  *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) (citing *United States v. Ruggiero*, 928 F.2d 1289, 1304 (2d Cir. 1991)).





*See United States v. Johnson*, 401 F.2d 746, 747–48 (2d Cir. 1968) (per curiam) (holding that gun was properly admitted where bank teller "testified that the gun looked like the gun which the robber had pointed at her"); *Williams v. Henderson*, No. No. 89 C 1624, 1990 WL 27158, at *4 (E.D.N.Y. Mar. 6, 1990) (holding that gun found one month later was sufficiently linked to robbery where cashier said it "looks like" the gun with which she was struck, even though she did not know the type of gun or recall its size or length of barrel); *see also United States v. Ferreira*, 821 F.2d 1, 6 (1st Cir. 1987) (noting that where there is proof weapon was used in robbery, the court may permit introduction of that weapon or weapon of similar kind to corroborate testimony linking defendant to crime charged); *United States v. Cunningham*, 423 F.2d 1269, 1276 (4th Cir. 1970) (finding that the "lack of positive testimony to identify the gun as the gun used in the robbery d[id] not preclude its admissibility" given evidence "that a weapon was used in the commission of the crime" and "evidence of the similarity between the gun admitted and the gun which was used").

In short, based on its proffer, the Government has made a sufficient showing that it can satisfy the Rule 901 threshold for admissibility of the handgun and ammunition at trial. As such, Palmer's motion *in limine* to exclude the physical evidence fails. The Court does *not* hold that the

handgun and ammunition are in fact admissible.  Rather, the Court simply cannot conclude at this stage that the physical evidence is "clearly inadmissible on all potential grounds."  *Cilins*, 2014 WL 173414, at *2 (quoting *Paredes*, 176 F. Supp. 2d at 181).  As the proponent, the Government bears the burden at trial to authenticate the handgun and ammunition under Rule 901.  Even if the Government can meet its burden at trial, Palmer "remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*."  *Tin Yat Chin*, 371 F.3d at 38 (citing *SCS Commc'n, Inc. v. Herrick Co.*, 360 F.3d 329, 344–45 (2d Cir. 2004); *see also United States v. Hon*, 904 F.2d 803, 810 (2d Cir. 1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence." (collecting sources)).

## SEALING AND REDACTIONS

The Court has filed this Memorandum Opinion and Order under seal because it references information that was redacted from the Government's opposition papers.  IT IS HEREBY ORDERED that no later than 12:00 p.m. on April 26, 2021, the parties shall confer and submit any proposed necessary and appropriate redactions for the version of this Memorandum Opinion and Order to be filed on the public docket.  Any proposed redactions must be accompanied by a brief letter explaining the grounds for the proposed redactions and citing applicable authority.  Any such submissions shall be e-mailed to Chambers at VyskocilNYSDChambers@nysd.uscourts.gov.

## CONCLUSION

For the foregoing reasons, Palmer's motions to dismiss the Indictment, to suppress statements, and to suppress the handgun and ammunition are DENIED.  The Clerk of Court is respectfully requested to terminate docket entries 45, 47, and 49.


**SO ORDERED.**

Date:  **April 22, 2021**
       **New York, NY**

**MAR  KAY VYSKOCIL**
**United States District Judge**